UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Annette M. Poganski,

Plaintiff,

v.

St. Cloud Hospital,

Defendant.

MEMORANDUM OPINION
And ORDER
Civil No. 01-20 (MJD/RLE)

---

Peter James Nickitas for and on behalf of Plaintiff.

Paul R. Harris and Kathleen M. Premo, Hughes Mathews, P.A., for and on behalf of Defendant.

---

This matter is before the Court upon Defendant St. Cloud Hospital's (the "Hospital") motion for summary judgment.

FACTUAL BACKGROUND

Plaintiff Annette Poganski applied for a Processing Center Attendant ("PCA") position with the Hospital in August 1999. She received a contingent offer of employment for this position, subject to a drug/alcohol screening and a Medical Pre-Placement Evaluation. Premo Aff., Ex. C. The Medical Pre-Placement Evaluation form states that the purpose of the evaluation is to "determine your work capabilities." Id. Ex. D. The form then asks a number of questions in order to obtain the applicant's medical history. Plaintiff indicated on her evaluation form that she suffered from no medical problems, other than allergies. Id. Specifically, the form asked if Plaintiff suffered from



FILED ______
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

musculoskeletal problems, such as pain/strain or surgery on her back, neck, shoulder, wrist, elbow, hip or knees, to which she answered "No". Id. The form also asked if Plaintiff suffered from pain in her legs, ankles, or feet, or joint pain, stiffness or swelling, to which she again answered "No." Id. Based on the information provided by Plaintiff in her Medical Pre-Placement Evaluation, the Hospital determined that Plaintiff was suitable for work with no restrictions. Id. Ex. E.

Plaintiff began her employment as a PCA with the Hospital on August 30, 1999. As a PCA, Plaintiff was responsible for disassembling, cleaning, sterilizing, reassembling and testing surgical equipment; maintaining a standard quantity of sterile supply packs; operating sterilizing equipment; and stocking case/procedure carts per the operating schedule. Id. Ex. G.

On March 9, 2000, Plaintiff completed Workers' Compensation "First Report of Injury" forms, indicating that in November 1999, she experienced a facial rash and that as of March 6, 2000, she suffered from pain in her wrists. Id. Ex. H. She sought and received medical attention for these injuries. See Id. Ex. I. With regard to the rash, Plaintiff first saw Dr. James Ewing at St. Cloud State University Student Health Services, who diagnosed perioral dermatitis, and prescribed Metronidazole cream. Id. (Bates Stamp SCH-AP 765). She also saw Dr. Yassim from Allergy & Asthma Associates, P.A., who diagnosed Plaintiff as suffering from a chemical reaction, and prescribed Metronidazole. In April 2000, Plaintiff saw Dr. Scott Rahm regarding dry and burning hands. Id. (Bates Stamp SCH-AP 00914-915). He diagnosed this condition as contact dermatitis, and restricted Plaintiff from working with sterilization wraps. Id. Fay

Chawla, the Supervisor of the Hospital's Occupational Health Services office, received this information, and informed Plaintiff's supervisor that she could not work with sterilization wraps. Chawla Affidavit, ¶ 8.

Plaintiff also saw a number of physicians regarding wrist pain. On March 10, 2000, she saw Dr. Hann of St. Cloud State University Student Health Services. He diagnosed her with "wrist pain" and prescribed splints. Id. (Bates Stamp SCH-AP 765). She was also referred to Dr. LeBlanc, a Workers' Compensation provider at Midwest Occupational Medicine. Dr. LeBlanc examined Plaintiff on March 31, 2000, and diagnosed Plaintiff as suffering from "regional neck syndrome with bilateral wrist tendonitis". He recommended physical therapy, but did not impose any restrictions at that time. Id. (Bates Stamp SCH-AP 754).

Plaintiff also saw Dr. Hauck of Northwest Orthopedic Surgeons.[1] He initially diagnosed "bilateral carpal tunnel syndrome" and placed her on no restrictions. Id. (Bates Stamp SCH-AP 749). Plaintiff again saw Dr. Hauck on April 28, 2000, at which time he determined that Plaintiff suffered from "bilateral overuse syndrome". Id. (Bates Stamp SCH-AP 748). He placed her on a medical leave of absence until further evaluation, and prescribed physical therapy. Id. Plaintiff was placed on paid medical leave at that time. Chawla Aff. ¶ 10.

Plaintiff saw Dr. Hauck again on May 19, 2000. Premo Aff., Ex. 1 (Bates Stamp SCH-AP 747). He diagnosed Plaintiff as suffering from overuse syndrome in the upper

---

[1] The Hospital reports that Dr. Hauck is not an approved Workers' Compensation provider. Chawla Aff. ¶ 9.

extremities, and restricted her to "no repetitive use of upper extremities and no lifting more than 5 pounds". Id. He authorized her return to work on May 22, 2000. Id. The Hospital modified Plaintiff's work duties pursuant to the medical restrictions placed on her. She was no longer exposed to sterilizing wraps, and her lifting restrictions were accommodated by allowing her to train new employees. Chawla Aff. ¶ 12. After training of new employees had been completed, Plaintiff was again placed on paid medical leave. Id.

In August 2000, the Hospital referred the Plaintiff to a qualified rehabilitation counselor, Mary Merchlewicz. Premo Aff. Ex. L (Bates Stamp Poganski 93). Plaintiff met with Ms. Merchlewicz for the first time on August 8, 2000. Id. (Bates Stamp Poganski 86). During this meeting, Ms. Merchlewicz contacted the insurance carrier and was told that the carrier would not approve ongoing treatment with Dr. Hauck. Id. (Bates Stamp Poganski 87). The Plaintiff then agreed to treat with Dr. LeBlanc. Id. An appointment was scheduled with Dr. LeBlanc for August 14, 2000. Id. Ms. Merchlewicz accompanied Plaintiff to this appointment. Id.

In the meantime, Plaintiff had applied for a medical records clerk position with the Hospital. By letter dated August 2, 2000, Plaintiff received a job offer for this position, which was contingent on passing a health assessment for the position. Kamphenkel Dep. Ex. 3. Plaintiff brought a physical demand analysis for the medical records clerk position to her appointment with Dr. LeBlanc. Id. (Bates Stamp Poganski 109). This document provides that the medical records clerk position requires frequent reaching, and

occasional[2] lifting over 15 pounds. Id. Ex. O. The position also requires "ability to answer phones, ability to walk from center B level to the various units multiple times per shift, ability to do repetitive filing." Id. Dr. LeBlanc examined Plaintiff and diagnosed "bilateral wrist/forearm tendonitis", and restricted her to "light grasping with no repetitive forceful grasping, 15 pound maximum limit". Id. With regard to the medical records clerk position, he reviewed the physical demand analysis and concluded "with the exception of the lifting, I believe that she should be able to do all of the other essential requirements." Id. He also recommended that she participate in a trial of the medical records clerk position. Id.

Ms. Merchlewicz then performed an on-site job analysis of the PCA position on August 21, 2000. Based on her analysis, Ms. Merchlewicz concluded that the PCA position could be modified to meet Plaintiff's medical restrictions, as imposed by Dr. LeBlanc. Id. (Bates Stamp Poganski 118). Ms. Merchlewicz was not asked by the Hospital to do an on-site job analysis for the medical records position, a was never given the opportunity to do so because she was fired by Plaintiff on August 22, 2000. (Bates Stamp Poganski 89).

By letter dated August 24, 2000, the Hospital notified Plaintiff that her PCA position, as modified, was available to Plaintiff, and that Plaintiff was to respond by September 1, 2000, or be terminated. Id. Ex. Q. By letter dated August 28, 2000, the Hospital notified Plaintiff that she did not meet the physical requirements for the medical

---

[2]"Occasional" is defined as 1%-33% - which is the equivalent of 1-2 hours per 8-hour shift.

records clerks position. As a result, the Hospital rescinded the job offer for the medical records position. Id. Ex. P.

Plaintiff returned to work on September 1, 2000. Plaintiff thereafter called Ms. Chawla and told her she would not be returning to the PCA job because of wrist pain. Plaintiff was then told to see Dr. Bachman on September 5, 2000. Plaintiff did see Dr. Bachman, who diagnosed bilateral wrist pain, and imposed the same restrictions as Dr. LeBlanc, with the addition of no repetitive wrist motion. Id., Ex. I (Bates Stamp SCH-AP 752). Thereafter, Plaintiff did not return to work. By letter dated September 6, 2000, Plaintiff was terminated. Chawla Dep. Ex. 20.

Plaintiff filed this suit, asserting claims of disability discrimination under state and federal law, and a state law claim under Minn. Stat. § 176.82.

Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). To determine whether genuine issues of material fact exist, the court determines materiality from the substantive law governing the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. Id. A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

Analysis

1. Disability Claims

The American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. was enacted, in part, to protect disabled persons from discrimination in their employment because of their disability. 42 U.S.C. § 12101. See also, Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, Subd. 1(2). To establish a claim of disability discrimination under the ADA or the MHRA, Plaintiff must establish that 1) she is disabled, as defined by statute; 2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and 3) she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1206 (8th Cir. 1997).

A plaintiff may prove disability by showing she: 1) has a physical or mental impairment which substantially (ADA) or materially (MHRA) limits one or more of such person's major life activities, 2) has a record of such an impairment, or 3) is regarded has having such an impairment. 42 U.S.C. § 12102(2); Minn. Stat. § 363.01, subd.13.

Major life activities, as that term is used in the ADA, are "those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working . . . [and] sitting, standing, lifting, reaching." 29 CFR Pt. 1630.2(i) App.; Snow, 128 F.3d at 1206, n. 3. To determine whether a person is substantially limited in a major life activity, the following factors should be taken into consideration: 1) the nature and severity of the impairment; 2) its

duration or anticipated duration; and 3) its long-term impact. Snow, at 1207.

Plaintiff alleges that she is disabled and that she has a record of a disability. In support, she cites to the fact that she had been diagnosed with fibromyalgia[3] in 1991, and because of the medical restrictions placed upon her. It is her position that being restricted from lifting more than fifteen pounds, and from repetitive, forceful grasping restricts her ability to perform a wide variety of jobs.

To show that she is substantially limited in the major life activity of working, Plaintiff must show that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." Conant v. City of Hibbing, 271 F.3d 782, 784-785 (8th Cir. 2001). It is not enough to show that she cannot perform a single particular job, a type of job or a specialized job. Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999). "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Id.

Plaintiff argues that her impairment and medical restrictions sufficiently limit her ability to work, and cites to Cravens v. Blue Cross Blue Shield of Kansas City, 214 F.3d 1011 (8th Cir. 2000) in support. In Cravens, the plaintiff's position required her to spend a substantial part of her time "keying" or typing claim information into a computer. Id.

---

[3]The Hospital asserts that it was never informed of the fibromyalgia diagnoses prior to her termination, therefore such evidence should not be taken into consideration in evaluating the disability claims. A fact issue exists, however, because Plaintiff testified at her deposition that she informed Ms. Chawla of the fibromyalgia diagnoses in May 2000.

1014. Three months prior to her termination, she was diagnosed with bilateral carpal tunnel syndrome and was permanently restricted to no or minimal keyboard activity. Id. at 1014. When her employer failed to reassign her to a position she could perform with reasonable accommodation, she brought suit. What was at issue in Cravens was not whether the plaintiff was disabled, but whether the employer failed to reasonably accommodate her disability. As is clearly stated in the opinion, the issue of whether the plaintiff was disabled was not disputed. Id. at 1016. In addition, Cravens is distinguishable from this case because Plaintiff's restrictions have not been deemed permanent, and she has only been restricted from lifting more than fifteen pounds and from performing repetitive, forceful grasping, not from keying or other keyboard activity.

The Eighth Circuit has addressed a case that involved medical restrictions similar to those imposed upon the Plaintiff. In Helfter v. United Parcel Service, Inc., the plaintiff had been medically restricted from performing sustained, highly repetitive activities with either hand, and from lifting more than ten pounds. 115 F.3d 613, 616 (8th Cir. 1997). The Eighth Circuit held that such impairments do not "create a genuine issue of material fact as to whether her impairment rendered the plaintiff unable to perform a class of jobs or a broad range of jobs in various classes within a geographical area to which she had reasonable access." Id. 618 (citing McKay v. Toyota Motor Mfg. U.S.A., 110 F.3d 369 (6th Cir. 1997) and Bolton v. Scrivner, 36 F.3d 939, 943-44 (10th Cir. 1994)). Instead, the court found that the plaintiff had only shown that she was "restricted only from performing jobs that require a substantial amount of sustained repetitive motion and

heavy lifting". In this case, the Plaintiff is only restricted from performing jobs that require repetitive, forceful grasping and heavy lifting; narrower restrictions than those involved in Helfter. It thus follows that Plaintiff, like the plaintiff in Helfter, has failed to show that she is precluded from a broad range of jobs.

Plaintiff further argues that the Hospital regarded her as disabled because Ms. Chawla did not offer her the medical records clerk position based on her belief that Plaintiff would be injured if she was given a trial run of the position. To show that she was regarded as disabled, Plaintiff must show that the Hospital "entertain[ed] misperceptions about the individual – it must [have] believe[d] either that one ha[d] a substantially limiting impairment that one [did] not have or that one ha[d] a substantially limiting impairment when, in fact, the impairment [was] not so limiting." Conant v. City of Hibbing, 271 F.3d 782, 785 (8th Cir. 2001)(citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).

In Conant, the plaintiff was restricted from lifting more than thirty pounds and from repeatedly squatting or bending. 271 F.3d at 784. Based on his medical restrictions, the City refused to hire the plaintiff as a general laborer. In bringing suit against the City, the plaintiff had argued that he was disabled, because the City regarded him as disabled because it refused to hire him. In determining that there was insufficient evidence to allow a reasonable factfinder to conclude that the City regarded the plaintiff as disabled, the court first held that the medical restrictions in place did not substantially limit the plaintiff in the major life activity of working. Id. at 785. The court then stated:

> There is a distinction between being regarded as an individual unqualified for a particular job because of a limiting physical impairment and being regarded as "disabled" within the meaning of the ADA. "Accordingly, an employer is free to decide that . . . some limiting, but not substantially limiting, impairments make individuals less than ideally suited for the job."

Id. (citing Sutton, 527 U.S. at 490-491)).

In this case, the evidence before the Court establishes that the Hospital perceived that Plaintiff could not perform the essential functions of the medical records clerk position based on that position's physical demand analysis. While Plaintiff disputes whether or not she could perform this position, the fact remains that the evidence only shows that the Hospital perceived Plaintiff as unable to perform this particular job. Based on this evidence, the Court finds that no reasonable jury could find that the Hospital regarded Plaintiff as being unable to work at a whole range or class of jobs.

Because Plaintiff has failed to show that she is disabled as that term is defined in the ADA or the MHRA, Plaintiff has failed to meet her burden of establishing a prima facie case. Accordingly, her disability claims fail, and the Hospital is entitled to summary judgment.

2. Failure to offer continued employment in violation of Minn. Stat. § 176.82

In Count 9 of her Complaint, Plaintiff alleges that the Hospital refused to offer her continued employment within her physical limitations without reasonable cause and in violation of Minn. Stat. § 176.82, Subd. 2. This statute provides:

> An employer who, without reasonable cause, refuses to offer continued employment to its employee when employment is available within the employee's physical limitations shall be liable in a civil action for one year's wages. The wages are payable from the date of the refusal to offer continued employment, and at the same time and at the same rate as the employee's preinjury wage, to continue

during the period of the refusal up to a maximum of $15,000. . .

As to this claim, the Court finds that genuine issues of material fact preclude summary judgment. Plaintiff asserts that even though she was offered the PCA position with modifications, she still was not able to perform the job. The record shows that she returned to work after September 1, 2000, but reported on September 5, 2000 that she still suffered from severe wrist pain when performing her job tasks. In addition, a genuine issue of fact exists as to whether Plaintiff could perform the medical records clerk position. Plaintiff is currently working at a similar position, and Dr. LeBlanc believed that, with the exception of the lifting requirement, he believed she may be able to perform the essential functions. Based on this evidence, the Court finds a genuine issue exists as to whether the Hospital refused to offer continued employment within Plaintiff's physical limitations.

IT IS HEREBY ORDERED that Defendant St. Cloud Hospital's Motion for Summary Judgment is GRANTED as to Counts 1 through 8 and DENIED as to Count 9.

Date: May 10, 2002

Michael J. Davis
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

✓ ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.